UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHELLE MILLER,

    Plaintiff,

v.                                             CASE NO. 3:19-CV-466-J-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues that the administrative decision is not supported by substantial evidence, because the Administrative Law Judge (ALJ) improperly discounted her treating physicians' opinions and her testimony. After considering the parties' briefs (docs. 16, 17) and the administrative record (doc. 11), I find the ALJ's decision is supported by substantial evidence. I affirm the Commissioner's decision.[1]

    *A.*    *Background*

Plaintiff Michelle Miller was born on July 20, 1953. She is a high school graduate who attended two years of college. Before her disability onset date, Plaintiff worked for 46 consecutive years, first as an administrative clerk and then as a financial customer service representative. In December 2012, Plaintiff had her first back surgery. After a recovery period, she returned to work and performed her duties. In April 2015, however, Plaintiff re-injured her back at work. Her office was being renovated. Rather than ask for help moving a slab of drywall in the way of the

---

[1] The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c).

women's restroom, posing a tripping hazard, Plaintiff moved it herself and wrenched her back. Six months after this injury, she still could not stand, sit, or walk without pain. She could not perform her work duties (she had attempted to return to work with limited hours), and her employer fired her in October 2015. Plaintiff had a second back surgery that month and has been in constant pain since. Plaintiff alleges a disability onset date of July 8, 2015, due to her back injury and nerve damage in her feet and legs.[2]

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of disorders of her spine, osteoarthritis, and peripheral neuropathy. But the ALJ determined that Plaintiff is not disabled as she retains the RFC to perform light work. (R. 23) Specifically,

> [She] could lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently. The claimant can stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour workday with normal breaks. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and occasionally climb ramps and stairs. The claimant must avoid concentrated exposure to unprotected heights and concentrated use of moving machinery.

(R. 13) The ALJ found that, with this RFC, Plaintiff could perform her past relevant work as she actually performed it and as the jobs are described in the Dictionary of Occupational Titles (DOT). The Appeals Council denied review. Plaintiff, her administrative remedies exhausted, filed this action.

    B.    *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[2] Her date of last insured for DIB purposes was June 30, 2019. She must prove she became disabled by this date.

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy because of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a

reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

C.  Discussion

1.  *Plaintiff's treating physicians*

Plaintiff argues the ALJ erred when he did not assign controlling weight to the opinions of two of Plaintiff's treating physicians, Nancy Medina, M.D. and Maxwell Steel, M.D. Both doctors treated Plaintiff at the behest of her company's workers' compensation insurance carrier, and both imposed limitations on Plaintiff's ability to work that approximate the sedentary exertional level. The Commissioner responds that the ALJ articulated good cause to discount the physicians' opinions on Plaintiff's work-related limitations and that substantial evidence supports the ALJ's determination that Plaintiff is capable of light work. I agree with the Commissioner.

The method for weighing medical opinions under the Social Security Act is in the regulations at 20 C.F.R. § 404.1527(c). Relevant here, the opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good

4

cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment." 20 C.F.R. § 404.1527(d)(2). With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). And the ALJ must state the weight given to different medical opinions and why. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Plaintiff injured her back on April 23, 2015; five days later she had her first appointment with Dr. Medina and described severe lower back pain and numbness and tingling radiating down her left leg into her toes. (R. 284) Dr. Medina ordered lumbar spine x-rays on April 28, 2015, which showed: "Vertebral bodies are normal in appearance with good visualization of pedicles and spinous processes. There is mild to moderate degenerative disc disease at all levels, especially L4-L5 and L5-S1. There is no compression fracture or spondylolisthesis identified." (R. 296) The radiologist's impression was, "[m]ild to moderate degenerative disease. No radiographic evidence of acute pathology." (*Id*.)

Dr. Medina found that Plaintiff could return to work provided she carries less than 10 pounds, does no lifting, pulls and pushes less than 30 pounds, and performs no twisting. (R. 286) The physician prescribed Plaintiff cyclobenzaprine and Skelaxin for muscle spasms and prednisone and Tylenol as anti-inflammatories. (*Id.*) Two days later – April 30, 2015 – Plaintiff's pain was so severe she went to the nearest emergency room, where she was prescribed pain medications. (R. 389) At her May 2, 2015 follow up appointment with Dr. Medina, Plaintiff's symptoms had worsened again; her pain level was 8 out of 10 despite medication. (R. 273) Dr. Medina reiterated her work-related limitations for Plaintiff and referred Plaintiff to orthopedist Dr. Steel. (R. 282, 295)

Plaintiff met Dr. Steel on May 6, 2015. (R. 335) She told the orthopedist that her pain had worsened since her injury. She described it as a "sharp, aching pain. It begins in her left gluteal area and radiates to her left foot." (*Id.*) Dr. Steel observed that Plaintiff walked without a limp, and "[s]he has tenderness to palpation over the left-sided lower lumbar region where there is some mild muscle spasm present." (R. 336) He diagnosed left sciatica and lumbar degenerative disc disease and recommended an MRI of Plaintiff's lumbar spine. (R. 337) Plaintiff's May 12, 2015 MRI showed broad-based bulging at L4-L5 and broad-based herniation at L5-S1 with borderline spinal stenosis. (R. 339) At her follow up appointment with Dr. Steel two days later, Plaintiff stated that "she is doing better at this time and that the burning pain has dissipated. She still has some numbness involving the left foot and posterior leg." (R. 332) She mentioned that "she thinks she can return to work with restricted hours and no lifting." (*Id.*) Dr. Steel interpreted Plaintiff's MRI as follows: "MRI shows a broad-based herniated disc at L5-S1. There is some progression in the facet arthritis compared to the prior MRI. There is no significant spinal stenosis seen." (R.

6

333) He prescribed a lumbar support brace and cleared Plaintiff to return to work with limited hours (three days per week).

Two weeks later, Plaintiff had not seen improvement – she still had tingling in her lower extremities and had to walk carefully because her feet were numb. (R. 332) She walked without a limp despite decreased sensation in her feet. A nerve conduction study by neurologist Mark Emas, M.D. (R. 338) was "consistent with chronic L5 radiculopathy and mild to moderate acute S1 radiculopathies." (R. 327) Dr. Steel recommended physical therapy to help with Plaintiff's strength and balance. (R. 328) "If pain does recur consider referral to spine surgery." (*Id*.)

By mid-June 2015, Plaintiff was experiencing pain in her right side as well, had almost fallen at work, and was "0% better" (though she classified her pain as 2 out of 10). (R. 323) Dr. Steel prescribed three weeks off work and finally recommended that Plaintiff consult a spine surgeon. (R. 324) At Plaintiff's final appointment with Dr. Steel on July 8, 2015 (her alleged onset date), she was "feeling worse," with "[m]ore numbness in both feet and calves," and she said she was "very unsteady on my feet" and afraid of falling at work. (R. 320) She was using a cane to walk.

Meanwhile, Plaintiff attended six physical therapy sessions at Cora Rehabilitation Clinic beginning on June 10, 2015. (R. 344) Over her sessions, she increased her side bend and rotation range of motion from 25% to 50% bilaterally and increased her flexion by 25%. Her therapist assessed that she could not lift or carry 10-20 pounds due to strength and balance deficits and could not walk without difficulty. (*Id*.) Dr. Steel had prescribed two to three therapy sessions per week for four weeks (R. 434); nonetheless, Plaintiff attended only six sessions and was discharged from therapy on July 21, 2015, due to "not returning in over 30 days. Unable to provide proper

7

assessment of pt at this time due to pt not returning." (*Id.*) Her therapist also noted that Plaintiff was not compliant with her home exercise program but "should the patient continue with Home Program as prescribed, the prognosis is fair." (*Id.*)

Then, in August 2015, Plaintiff saw Bradley Wallace, M.D., Ph.D., the neurosurgeon who had performed her successful L4-L5 microdiscectomy in January 2012 (before her onset date, unrelated to her April 2015 injury). (R. 368) Plaintiff relayed to him that her pain started in her left hip after her injury, then spread to her left lower extremity and her right side. The neurosurgeon wrote:

> The patient was treated with Prednisone and Percocet. She had resolution of the pain; however, it recurred. She also underwent six sessions of physical therapy. Currently, in addition to the pain she has some weakness in the left foot and also has right lower extremity numbness as well. She has some difficulty with ambulation due to pain, weakness and numbness and has been utilizing a cane. Her pain has improved over time but the numbness and weakness persisted.

(R. 368) Dr. Wallace reviewed Plaintiff's lumbar spine MRI and her nerve conduction studies (both ordered by Dr. Steel) and "had a lengthy discussion with the patient regarding treatment options," which were to continue with nonoperative therapy (anti-inflammatories and pain medications) or to have a left L5-S1 microdiscectomy. (R. 370)

Plaintiff proceeded with surgery, and in October 2015, Dr. Wallace performed a second microdiscectomy on Plaintiff. Unlike after her 2012 spine surgery, however, this time there was "no significant change in symptoms." (R. 465) She still had numbness and tingling in her lower extremities three months after her surgery. (R. 474) Her gait was "very slow and unsteady." (*Id.*) "She complains of numbness in her feet and has a great fear of falling and for this reason has not returned to work. She uses a cane in the right hand." (R. 465) In January 2016, with no improvement to her symptoms, Plaintiff consulted neurologist Bruce Hartwig, M.D. at Dr.

Wallace's request (*Id.*)  He found that her lower extremity complaints were most likely due to lumbosacral radiculopathy rather than peripheral neuropathy and recommended a trial of Neurontin to help with the tingling. (R. 466)  Dr. Hartwig deferred to Dr. Wallace regarding any restrictions on Plaintiff's ability to work.

At Plaintiff's final appointment of record with Dr. Wallace, he noted Plaintiff's concerns of "a stocking-type distribution bilateral lower extremities." (R. 496)  He reviewed her nerve conduction studies "which did not identify a peripheral neuropathy of significance.  Notably she underwent a L5-S1 microdiscectomy and has no residual pain other than occasional right hip pain and some pain in the low back." (*Id.*)  He did not recommend additional surgery because "[h]er chief complaint is numbness with minimal pain.  She states that she has difficulty with ambulation as a result of her numbness.  She does not have significant claudication [pain in lower leg due to inadequate blood flow] although she does have a mild-to-moderate degree of L4-5 canal stenosis.  As a result I do not feel that the L4-5 canal stenosis is a significant contributor to her current complaints." (R. 497)  With no other options, Dr. Wallace referred Plaintiff to pain management.

Plaintiff had her first appointment with pain management doctor Joseph Cartwright, M.D. on May 12, 2016. (R. 499) She described her aching, burning, spastic, tight pain with any movement, assessed her pain level as 8 out of 10, and complained of constant bilateral numbness in both feet and calves.  "Her pain decreases with pain medication and rest" but she was not taking any pain medications. (*Id.*)  Dr. Cartwright assessed her with lumbar post-laminectomy syndrome (failed back surgery) and wrote that Plaintiff "has exhausted physical therapy at this time and [it is] unlikely to help." (R. 502)  On a new patient pain worksheet, however, Plaintiff wrote: "I do

9

not have pain – I have numbness in both feet and calves." (R. 504) Dr. Cartwright prescribed Gabapentin for Plaintiff's pain.

Plaintiff saw Dr. Cartwright once every two months or so for continued pain management. At her final appointment of record in March 2017, Plaintiff stated she was too anxious to try a lumbar epidural and was not open to trying injections. She was using a cane and a walker. Dr. Cartwright opined, "I really do not feel that Ms. Miller would be able to sustain any type of gainful employment. She should pursue long term disability." (R. 540)

Amid his summary of this medical evidence, the ALJ discounted Drs. Medina and Steel's opinions regarding Plaintiff's work limitations "as they were rendered prior to the alleged onset date of disability, and subsequent treatment records during the relevant period establish a greater level of functioning with treatment." (R. 14) I agree with Plaintiff that, standing alone, it would be error for the ALJ to discount Drs. Medina and Steel's opinions simply because they predate Plaintiff's alleged onset date. These were the first physicians to treat Plaintiff after her workplace injury, and their records provided a starting point for her subsequent medical treatment. But what I take from the ALJ's statement and my own review of the evidence is that Plaintiff continued to improve after Drs. Medina and Steel opined she could not return to work. There is substantial evidentiary support for this. Although her October 2015 back surgery did not resolve her numbness and tingling, it decreased her pain (Dr. Wallace wrote that Plaintiff's chief complaint is numbness with minimal pain). She did not attend all her prescribed physical therapy sessions, despite some improvement. And Dr. Cartwright advised her to consider a spinal epidural and lumbar injections, and she declined. He also recommended implanting a spinal cord stimulator, a treatment she had not pursued as of the hearing date.

Plaintiff also argues that the ALJ considered Dr. Medina's opinion in isolation from Dr. Steel's. There is no merit to this – the ALJ discussed both doctor's opinions in the same paragraph, in retelling Plaintiff's medical story. Both doctors rendered opinions on Plaintiff's RFC. A claimant's RFC is the most work he can do despite any limitations caused by her impairments. 20 C.F.R. § 404.1545(a)(1). Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c). Notably, Plaintiff does not argue that the ALJ's RFC determination is unsubstantiated, instead opting to challenge the ALJ's weighing of the medical evidence.

At this point in my analysis, I reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* I may not reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239. Considering this, there is substantial evidentiary support for the ALJ's decision to discount the functional limitations assessed by Drs. Medina and Steel.

### 2.   *Plaintiff's work history*

Plaintiff's second argument is that the ALJ should have considered her 46-year work history before discounting her testimony regarding her limitations as inconsistent with her medical record. Plaintiff's certified earnings record shows earnings every quarter from 1969, through her disability onset date of July 2015.

The evaluation of a claimant's subjective symptoms is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonable expected to give rise to the alleged pain." *Id.* (*quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Where a claimant satisfies the pain standard, the ALJ then assesses the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. § 404. 1529(c). Considerations relevant to this evaluation include: the objective medical evidence; evidence of factors that precipitate or aggravate the claimant's symptoms, medications and treatments available to alleviate these symptoms; the type, dosage, effectiveness, and side effects of such medications and treatments; how the symptoms affect the claimant's daily activities; and the claimant's past work history. *Id.* "If the ALJ decides not to credit a claimant's testimony about her symptoms, the ALJ must 'articulate explicit and adequate reasons for doing so.'" *McMahon v. Comm'r of Soc. Sec. Admin.*, 583 F. App'x 886, 893 (11th Cir. 2014) (*quoting Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit does not require that an ALJ summarize the entire record in his decision or "cite particular phrases or formulations" in assessing credibility.[3] *Dyer*, 395 F.3d at 1210-11. In fact, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not

---

[3] The SSA no longer uses the term "credibility" when assessing if a claimant's subjective complaints are consistent with and supported by the record. Because the parties employ this term in their briefs, however, I utilize it here for consistency and ease of reference.

enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* at 1211. (internal quotations omitted). Thus, if an ALJ provides a clearly articulated credibility finding supported by substantial evidence, the finding will not be disturbed on appeal. *Foote*, 67 F.3d at 1562.

Here, the ALJ has done so. In addressing Plaintiff's testimony and complaints, the ALJ considered Plaintiff's work history. The ALJ wrote:

> At the hearing, the claimant testified that she has a high school education and has completed 2 years of college. She has worked as a client service manager and a receptionist. She last worked in July 2015. She said she stopped working after injuring her back while at work, and was let go because she could no longer physically perform her job duties. She believes she is unable to work because of difficulty sitting, standing, and walking for prolonged periods of time. She reported experiencing burning, tingling, numbness, and shooting pain. She said her medications cause dizziness. She underwent lower back surgery in December 2012, and subsequently returned to work.

(R. 13-14) The ALJ evaluated various factors, including Plaintiff's daily activities, the type and effectiveness of her medications, and other factors concerning her functional limitations. *See* 20 C.F.R. § 404.1529(c)(3). Although the ALJ did not specifically discuss the length of Plaintiff's work history, he did elicit testimony from the vocational expert at the hearing about Plaintiff's past relevant work, and Plaintiff's certified earnings record was a part of the administrative record. Thus, I find no error in this or any other aspect of the ALJ's credibility analysis. *See Neff v. Saul*, No. 18-cv-3040-T-SPF, 2020 WL 1181952, at *5 (M.D. Fla. Mar. 12, 2020) (upholding credibility analysis despite not explicitly discussing plaintiff's work history, because ALJ obviously considered it when he elicited testimony from VE about past relevant work and had access to plaintiff's earnings record); *Crowley v. Berryhill*, No. 3:18-cv-460-J-JBT, 2019 WL 587423, at *2 (M.D. Fla. Jan. 3, 2019) (same); *Coleman v. Astrue*, No. 8:11-cv-1783-T-TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) (same).

D.   *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The Commissioner's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on March 26, 2020.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE